

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 10, 1947

Honorable Arthur B. Knickerbocker
The Adjutant General of Texas
Austin, Texas

Opinion No. V-26

Re: Authority of the Adju-
tant General of Texas
to operate State owned
motor vehicles without
identifying marks and
license plates.

Dear Sir:

Your request for an opinion concerning the above sub-
ject has been received. From your letter, we quote:

"An opinion is requested as to whether the
Adjutant General is authorized, under the exist-
ing laws, to operate such State-owned vehicles as
may be expected to be required for use in areas
of unrest, without the identifying markings and
signs required by State law to be displayed on
State-owned motor vehicles, and whether the Adju-
tant General has the authority to receive from
the Highway Department license plates for such
vehicles, without the identifying markings nor-
mally provided for State-owned motor equipment."

We are met at the outset with Article 821 of Vernon's
Annotated Penal Code, which provides:

"There shall be printed upon each side of
every automobile, truck or other motor vehicle
owned by the State of Texas the word 'Texas',
followed in letters of not less than two (2)
inches high by the title of the department,
bureau, board, commission or official having
the custody of such car, and such inscription
shall be in a color sufficiently different
from the body of the car so that the lettering
shall be plainly legible at a distance of not
less than one hundred (100) feet, and the of-
ficial having control thereof shall have such

wording placed thereon as prescribed herein,
and whoever drives any automobile, truck or
other motor vehicle belonging to the State
upon the streets of any town or city or upon
a public highway without such inscription
printed thereon shall be fined not less than
Twenty-five Dollars ($25.00) nor more than
One Hundred Dollars ($100.00)." (Acts 1921,
p. 122, as amended Acts 1931, 42nd Leg., p.
373, ch. 219, §1.)

In construing this Article, we are guided by the terms of Article 7 of Vernon's Annotated Penal Code, which provides:

"This code and every other law upon the
subject of crime which may be enacted shall
be construed according to the plain import of
the language in which it is written, without
regard to the distinction usually made between
the construction of penal laws and laws upon
other subjects; and no person shall be punished
for an offense which is not made penal by the
plain import of the words of a law."

There can be no question that the terms of Article 821, supra, are as plainly put as words could be. There seems to be no mistake in the intention set forth in this Article. Going back to the original Act as passed by the 37th Leg., 1921, Chap. 59 of the General Laws, we find Section 4, stating:

"The fact that State-owned motor vehicles
are not now designated, creates confusion, and
is an impediment to the peace officers enforcing
the traffic laws of this State. . ."

Here we have the specific intent of the Legislature stated. It is for the benefit of peace officers while they are enforcing the traffic laws of this State. It helped these officers to identify readily State-owned motor vehicles, and not only that, it made more feasible the apprehension of State officials and employees using State-owned vehicles for private purposes. The 42nd Legislature of 1931, Chap. 219, at page 373 of the General Laws amended the Article so that the inscription and markings on the automobile could be even more easily seen and distinguished. In effect, the 42nd Legislature emphasized the provisions of this Article

and recognized the importance of it as stated by the 37th Legislature. The Article, as the 42nd Legislature amended it, appears on the books today. At no time has the Article been construed by the courts. But using the guide for construction as set out in Art. 7, supra, we are constrained to hold that the language is so clear and unambiguous, as well as the intent of the Legislature, that there can be no exception or exemption ingrafted upon said Article by implication or construction.

It is conceivable that emergencies might arise in which the Adjutant General could operate to better advantage by using unmarked vehicles. But to allow him to operate unmarked State-owned automobiles "as may be expected to be required for use in areas of unrest" would in effect permit the Adjutant General an exclusive exemption from the plain and unequivocal terms of Article 821. Through this door of exemption would appear the Department of Public Safety, enforcement officers of the Railroad Commission, the Game, Fish and Oyster Commission, the Health Department and any other department which deemed it necessary to suppress the identity of their vehicles in making an investigation. The Legislature here is doing nothing more than exercising its lawful prerogative of making due and proper regulatory laws for the use of State-owned property. In so doing, the law makers have sought to aid rather than interfere with the law enforcement agencies. Reading this Article in any other light would result in confusion and a virtual repeal of the statute. In cases of this nature it is deemed more appropriate for the Legislature to make such exemptions, if such are intended.

Concerning the question of whether the Adjutant General has authority to receive from the Highway Department license plates different from the normal markings of State-owned vehicles, the terms of Art. 6675a-3aa, Vernon's Annotated Civil Statutes, control. That statute provides, among other things: "* * *said department may provide for the issuance of specially designated plates to those exempt by law, and may provide rules and regulations for the issuance thereof, and for the enforcement hereof. * * * *." From this language, it seems that your authority to receive the kind of plates desired for the special use inquired about would have to be obtained from the Highway Department. In the event that Department deems it wise or advisable, then under the statute, 6675a-3aa, the issuance of such plates would be in order.

In view of the foregoing, we have reached the conclusion that the Adjutant General is without authority to operate State-owned vehicles without the identification marks

required by Article 821, supra. On the other hand, the Adjutant General may receive license plates for State-owned vehicles without identifying markings normally provided for State-owned motor equipment, provided the State Highway Department deems it advisable.

## SUMMARY

1. There is no authority for the Adjutant General to operate State-owned vehicles without the identification marks and signs required by Article 821, V.A.P.C.

2. Under the authority of the State Highway Department, the Adjutant General may be issued license plates without the identifying markings normally provided for State-owned motor equipment, if that Department deems the issuance of such plates advisable. 6675a-3aa, V.A.C.S.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By ~~Charles B. Crenshaw~~
Charles E. Crenshaw
Assistant

CEC:rt:mmc

APPROVED OPINION COMMITTEE

BY ~~~~

APPROVED FEB 10, 1947

ATTORNEY GENERAL